# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. <u>18-20989-CR-RKA/JB(s)</u>
18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1957
18 U.S.C. § 670(a)(6)
18 U.S.C. § 670(a)(1)
18 U.S.C. § 554
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)

**UNITED STATES OF AMERICA**

**vs.**

**RAOUL DOEKHIE,**
**JOHNNY GROBMAN, and**
**SHERIDA NABI,**

**Defendants.**
_____/



### SUPERSEDING INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Superseding Indictment:

1.      The U.S. Food and Drug Administration ("FDA") was an agency of the United States Government charged with the responsibility of protecting the American public by ensuring, among other things, that food, drugs, and medical devices distributed in the United States were safe.  The FDA did so by enforcing the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*

2.      Food was regulated by the FDA to ensure that it was safe and sanitary and that it bore truthful labeling in accordance with FDA requirements with respect to, among other things, ingredients, major allergens, and nutritional health claims.

3.      Infant formula was regulated by the FDA as a food.  Because infant formula often is the sole source of nutrition for a vulnerable population during a critical period of growth and development, it was also subject to other statutory and regulatory requirements, in addition to those applicable to conventional food.  Among other things, manufacturers of infant formula must comply with current good manufacturing practices and must retain certain records related to the distribution of infant formula necessary to effect and monitor recalls of infant formula.  When infant formula is obtained through fraud or deception and not distributed in accordance with representations made to the manufacturer, the ability to conduct effective recalls, if necessary, may be disrupted.

4.      Pursuant to the Public Health Security and Bioterrorism Preparedness Response Act of 2002, prior notice was required to be submitted to FDA of food, including infant formula, that was imported or offered for import into the United States.  Advance notice of imported food shipments allowed FDA to target import inspections more effectively and to help protect the food supply against food-related public health emergencies.

5.      Drugs were regulated by the FDA to ensure that they were safe and effective for their intended uses.  Drugs distributed in the United States generally were required to bear truthful labeling with, among other things, adequate directions for use and adequate warnings.  In addition, drugs were required to be manufactured, processed, packed, and held in conformity with current good manufacturing practices to ensure that the drug met applicable standards of safety, strength, and purity.

6.      Certain ophthalmic drug products were regulated by the FDA as drugs.  Ophthalmic drug products that are used with contact lenses are regulated by the FDA as medical devices.

7.      In addition, because of concerns that certain medical products could become ineffective or harmful if not properly handled or stored, federal law imposed criminal penalties on those who obtained pre-retail medical products, including infant formula and ophthalmic drug products, by fraud or deceit.

8.      The Automated Export System ("AES") was a joint venture between U.S. Customs and Border Protection, the Foreign Trade Division of the Bureau of the Census, the Bureau of Industry and Security, the Directorate of Defense Trade Controls, other federal agencies, and the export trade community.  AES was a system U.S. exporters used to declare international exports.  This data was used for various purposes, including for the U.S. Census Bureau to compile export statistics and for other government agencies for trade enforcement purposes.

9.      The Victim Companies, which included Victim Company One (a manufacturer of infant formula); Victim Company Two (a manufacturer of ophthalmic drug products); Victim Company Three (a supplier of sugar); and Victim Company Four (a manufacturer of food products), were manufacturers, distributors and suppliers of medical products and food products.

## DEFENDANTS AND RELATED ENTITIES

10.     Defendant **RAOUL DOEKHIE** was a citizen of the Netherlands, with a residence located in Broward County, Florida.  **DOEKHIE** presented himself as the Director of Tropical Marketing & Distribution N.V. ("Tropical"), which was a business located in Paramaribo, Suriname.  **DOEKHIE** established personal bank accounts in his name and corporate bank accounts for Tropical at various banks in Miami-Dade County, including Bank of America and Regions Bank.

3

11.     Defendant **JOHNNY GROBMAN** was a resident of Miami-Dade County, Florida, and presented himself as the manager for Nutrisource I, LLC ("Nutrisource").  **GROBMAN** was also an employee of J Trading, LLC ("J Trading"), whose corporate documents listed its registered agent as Vejota Holdings LLC.  In corporate documents, Vejota Holdings LLC listed **GROBMAN** as its manager.  Vejota Holdings LLC, Nutrisource, and J Trading's corporate documents show the same address in Aventura, Florida, as its principal address.  **GROBMAN** also established personal bank accounts and investment accounts in his name and corporate bank accounts for Nutrisource and J Trading at various banks in Miami-Dade County, including Bank of America, Merrill Lynch, and UBS.

12.     Defendant **SHERIDA NABI** was a citizen of the Netherlands, with a residence located in Broward County, Florida, and presented herself as the Sales and Marketing Manager of Tropical.  **NABI** established personal bank accounts in her name and corporate bank accounts for Tropical at various banks in Miami-Dade County, including Bank of America and Regions Bank.

13.     Edgar Torres ("Torres") was a resident of Branford, Florida, and the president and registered agent of Le Mare Transport, Inc. ("Le Mare").  In corporate documents, Le Mare listed a business address in Medley, Florida.    Torres also presented himself as the president and registered agent of T/Y Int'l, Inc. ("T/Y Int'l"), whose principal address was in Branford, Florida. Torres established personal bank accounts in his name and corporate bank accounts for Le Mare and T/Y Int'l at various banks in Miami-Dade County and elsewhere, including Bank of America and Ameris Bank.

## COUNT 1
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 13 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.      From at least as early as in or around March 2013, the exact date being unknown to the Grand Jury, through in or around December 2018, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**RAOUL DOEKHIE,**
**JOHNNY GROBMAN, and**
**SHERIDA NABI,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by obtaining FDA-regulated consumer goods, drugs, and medical products at deeply discounted prices from the Victim Companies by falsely and fraudulently representing to the Victim Companies that the products were for distribution and use outside of

the United States (i.e., "for export only"), when, in fact, the defendants from the outset, intended

to, and did, sell those goods, drugs, and medical products at a substantial profit to wholesalers,

distributors, and others in the United States.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to

accomplish the object and purposes of the conspiracy included, among others, the following:

4.     **RAOUL DOEKHIE** and **SHERIDA NABI**, on behalf of Tropical, made false and

fraudulent representations to the Victim Companies in order to induce the Victim Companies to

offer them special discount pricing, including representations that **DOEKHIE** and **NABI** sought

to purchase the Victim Companies' products exclusively for distribution and use abroad,

specifically, in Suriname.

5.     In support of their false and fraudulent representation that the Victim Companies'

products would be distributed only in Suriname, **RAOUL DOEKHIE** and **SHERIDA NABI** on

behalf of Tropical also made false and fraudulent representations to the Victim Companies that

they had a government tender for a particular Victim Company's products.

6.     **RAOUL DOEKHIE, SHERIDA NABI**, and other co-conspirators created a

website for a fictional entity entitled the "Suriname Tender Office" to support their false and

fraudulent representations that they had a government tender for a Victim Company's products.

7.     The Victim Companies relied on **RAOUL DOEKHIE** and **SHERIDA NABI**'s

false and fraudulent representations and sold their products to **DOEKHIE** and **NABI** at deeply

discounted prices.

8.      **RAOUL DOEKHIE, JOHNNY GROBMAN, SHERIDA NABI,** Edgar Torres, and other co-conspirators arranged for the distribution and sale within the United States of the Victim Companies' products.

9.      At times, **RAOUL DOEKHIE, JOHNNY GROBMAN, SHERIDA NABI,** Edgar Torres, and other co-conspirators arranged for the fraudulently obtained products to be shipped abroad and then immediately shipped, or "U-turned," back to the United States, to be distributed within the United States.

10.     When importing the "U-turned" products back to the United States, **JOHNNY GROBMAN** submitted false and fraudulent documents to United States Customs and Border Protection, which was responsible for overseeing imports into the United States.

11.     At other times, **RAOUL DOEKHIE, JOHNNY GROBMAN, SHERIDA NABI,** Edgar Torres, and other co-conspirators arranged for the fraudulently obtained products to be diverted directly to locations within the United States, and "dummy" shipments were exported instead, in order to generate documentation to provide to the Victim Companies as proof of export.

12.     **RAOUL DOEKHIE** and **SHERIDA NABI** directed Edgar Torres to create false and fraudulent documentation to provide to the Victim Companies as proof of export.

13.     **RAOUL DOEKHIE** and **SHERIDA NABI** also provided false and fraudulent export documentation to the Victim Companies to conceal their fraudulent scheme.

14.     **RAOUL DOEKHIE** and **SHERIDA NABI** caused false AES filings to be made in connection with certain exports.

15.     After the products were diverted, **JOHNNY GROBMAN**, on behalf of J Trading and Nutrisource, and Edgar Torres, on behalf of Le Mare, sold the fraudulently obtained products

to distributors in the United States.  **GROBMAN** and Torres remitted a portion of their profits back to **SHERIDA NABI** and **RAOUL DOEKHIE**.

16.     **JOHNNY GROBMAN**, on behalf of J Trading and Nutrisource, made millions of dollars in payments to **SHERIDA NABI** and **RAOUL DOEKHIE** in exchange for the fraudulently obtained products.

17.     The defendants and their co-conspirators carried out their fraudulent scheme through the use of interstate and foreign wires, specifically, through interstate and foreign wire transfers and e-mail communications.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-9**
**Wire Fraud**
**(18 U.S.C. § 1343)**

1.     Paragraphs 1 through 13 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.     From at least as early as in or around March 2013, the exact date being unknown to the Grand Jury, through in or around December 2018, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**RAOUL DOEKHIE,**
**JOHNNY GROBMAN, and**
**SHERIDA NABI,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in

8

interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was a purpose of the scheme and artifice for the defendants and their accomplices to unjustly enrich themselves by obtaining FDA-regulated consumer goods, drugs, and medical products at deeply discounted prices from the Victim Companies by falsely and fraudulently representing to the Victim Companies that the products were for distribution and use outside of the United States (i.e., "for export only"), when, in fact, the defendants from the outset, intended to, and did, sell those goods, drugs, and medical products at a substantial profit to wholesalers, distributors, and others in the United States.

## SCHEME AND ARTIFICE

4.      The Manner and Means section of Count 1 of this Superseding Indictment is re-alleged and incorporated by reference herein as the description of the scheme and artifice.

## USE OF WIRES

5.      On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, as specified in each count below, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds:

| | | | |
|---|---|---|---|
| 2 | February 13, 2017 | **RAOUL DOEKHIE, JOHNNY GROBMAN, and SHERIDA NABI** | E-mail transmission from **SHERIDA NABI**, in a place outside the United States, to **JOHNNY GROBMAN**, in Miami-Dade County, Florida, and **RAOUL DOEKHIE**, regarding the loss of Victim Company Four's business following the company's discovery of the defendants' fraudulent scheme. |
| 3 | February 15, 2017 | **RAOUL DOEKHIE and SHERIDA NABI** | E-mail transmission containing photographs and documents regarding shipments of infant formula from Edgar Torres in Miami-Dade County, Florida, to **SHERIDA NABI, RAOUL DOEKHIE**, and another individual, in a place outside the United States. |
| 4 | June 22, 2017 | **RAOUL DOEKHIE and SHERIDA NABI** | E-mail transmission, regarding containers of infant formula being prepared for transport, including attached invoices and a distribution warehouse receipt, from Edgar Torres in Miami-Dade County, Florida, to **SHERIDA NABI, RAOUL DOEKHIE**, and another individual, in a place outside the United States. |
| 5 | August 11, 2017 | **RAOUL DOEKHIE and SHERIDA NABI** | E-mail transmission from **SHERIDA NABI**, in a place outside the United States, to Edgar Torres in Miami-Dade County, Florida, and **RAOUL DOEKHIE**, in a place outside the United States, regarding how to address a Victim Company Three's discovery of the defendants' fraudulent scheme. |

| | | | |
|---|---|---|---|
| 6 | August 16, 2017 | **RAOUL DOEKHIE and SHERIDA NABI** | E-mail transmission, containing loading guides depicting the shipments of both infant formula and sheet rock, and pickup orders for containers of infant formula, from Edgar Torres in Miami-Dade County, Florida, to **SHERIDA NABI, RAOUL DOEKHIE,** and another individual, in a place outside the United States. |
| 7 | September 22, 2017 | **RAOUL DOEKHIE and SHERIDA NABI** | E-mail transmission, regarding containers of infant formula being prepared for transport, attached to which were an attached invoice and multiple bills of lading, from Edgar Torres in Miami-Dade County, Florida to **SHERIDA NABI, RAOUL DOEKHIE,** and another individual, in a place outside the United States. |
| 8 | March 23, 2018 | **RAOUL DOEKHIE, JOHNNY GROBMAN, and SHERIDA NABI** | E-mail transmission, regarding taking labels off Victim Company Two's products, from **JOHNNY GROBMAN,** in Miami-Dade County, Florida, to **SHERIDA NABI,** and **RAOUL DOEKHIE,** in a place outside the United States. |
| 9 | March 23, 2018 | **RAOUL DOEKHIE, JOHNNY GROBMAN, and SHERIDA NABI** | E-mail transmission from **JOHNNY GROBMAN,** in Miami-Dade County, Florida, to **SHERIDA NABI,** and **RAOUL DOEKHIE,** in a place outside the United States, regarding the shipment of products to Suriname after Victim Company Two intended to travel to Suriname to investigate the defendants' fraudulent scheme. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 10-20
## Money Laundering
### (18 U.S.C. § 1957)

On or about the dates enumerated below as to each defendant, in Miami-Dade and Broward

Counties, in the Southern District of Florida, and elsewhere,

## RAOUL DOEKHIE,
## JOHNNY GROBMAN, and
## SHERIDA NABI,

did knowingly engage in and attempt to engage in monetary transactions affecting interstate and

foreign commerce, by, through, and to a financial institution, in criminally derived property of a

value greater than $10,000, such property having been derived from a specified unlawful activity,

and knowing that the property involved in the financial transactions represented the proceeds of

some form of unlawful activity, as more particularly described in each count below:

| Count | Defendant | Approx. Date of Transaction | Approximate Amount | Financial Transaction |
|---|---|---|---|---|
| 10 | **JOHNNY GROBMAN** | October 2, 2014 | $350,000 | Electronic wire transfer from J Trading's Bank of America ("BoA") account ending in 3375 to Grobman's UBS account ending 9121 |
| 11 | **JOHNNY GROBMAN** | August 26, 2015 | $150,000 | Electronic wire transfer from J Trading's BoA account ending in 3375 to Grobman's UBS account ending in 9123 |
| 12 | **JOHNNY GROBMAN** | January 20, 2016 | $1,000,000 | Electronic wire transfer from J Trading's BoA account ending in 3375 to Grobman's UBS account ending in 9122 |
| 13 | **JOHNNY GROBMAN** | January 13, 2017 | $372,900 | Electronic wire transfer from Nutrisource's BoA account ending in 0268 to Nutrisource's BoA account ending in 9476 |

| Count | Defendant(s) | Approx. Date of Transaction | Approximate Amount | Financial Transaction |
|-------|--------------|------------------------------|---------------------|------------------------|
| 14 | **JOHNNY GROBMAN** | February 1, 2017 | $3,246,156.25 | Electronic wire transfer from Grobman's BoA mortgage account ending in 3075 to Grobman's UBS Bank USA mortgage account ending in 3377, for the real property located at 100 Golden Beach Drive, Golden Beach, Florida |
| 15 | **JOHNNY GROBMAN** | June 14, 2017 | $300,000 | Electronic wire transfer from Nutrisource's BoA account ending in 0268 to Vejota Holdings LLC's BoA account ending in 9463 |
| 16 | **JOHNNY GROBMAN** | June 28, 2017 | $324,281.97 | Electronic wire transfer from J Trading's BoA account ending in 3375 to J Trading's UBS account ending in 3918 |
| 17 | **JOHNNY GROBMAN** | August 2, 2017 | $1,650,000 | Electronic wire transfer from Grobman's BoA account ending 3836 to his Merrill Lynch account ending 3274 |
| 18 | **RAOUL DOEKHIE** and **SHERIDA NABI** | October 31, 2017 | $80,000 | Electronic wire transfer from Tropical's Regions Bank account ending in 2316 to Doekhie and Nabi's BoA account ending in 9650 |
| 19 | **RAOUL DOEKHIE** and **SHERIDA NABI** | November 1, 2017 | $80,000 | Electronic wire transfer from Doekhie and Nabi's BoA account ending in 9650 to their BoA account ending in 4558 |
| 20 | **JOHNNY GROBMAN** | December 19, 2017 | $300,000.00 | Electronic wire transfer from J Trading's BoA account ending in 3375 to Grobman's BoA account ending in 3836 |

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343; and smuggling goods from the United States, in violation of Title 18, United States Code, Section 554.

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 21
### Conspiracy to Obtain by Fraud and Deception Pre-Retail Medical Products
### (18 U.S.C. § 670(a)(6))

1.      Paragraphs 1 through 13 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.      From in or around March 2013, the exact date being unknown to the Grand Jury, through in or around December 2018, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**RAOUL DOEKHIE,**
**JOHNNY GROBMAN, and**
**SHERIDA NABI,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to obtain by fraud and deception pre-retail medical products, with a value of $5,000 or greater, that is, infant formula, in and using a means or facility of interstate and foreign commerce, in violation of Title 18, United States Code, Section 670(a)(6) and (a)(1).

## COUNTS 22-29
### Theft of Pre-Retail Medical Products
### (18 U.S.C. § 670(a)(1))

1.      Paragraphs 1 through 13 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.      On or about the dates specified as to each count below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**RAOUL DOEKHIE and
SHERIDA NABI,**

did obtain by fraud and deception pre-retail medical products, with a value of $5,000 or greater, that is, infant formula, in and using a means or facility of interstate and foreign commerce:

|    |                   |
|----|-------------------|
| 22 | January 11, 2017  |
| 23 | January 17, 2017  |
| 24 | February 17, 2017 |
| 25 | March 3, 2017     |
| 26 | March 15, 2017    |
| 27 | April 27, 2017    |
| 28 | May 17, 2017      |
| 29 | June 14, 2017     |

In violation of Title 18, United States Code, Sections 670(a)(1) and 2.

## COUNTS 30–31
### Smuggling Goods from the United States
### (18 U.S.C. § 554)

1.      Paragraphs 1 through 13 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.      On or about the dates specified as to each count below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**RAOUL DOEKHIE,
JOHNNY GROBMAN, and
SHERIDA NABI,**

did fraudulently and knowingly export and send from the United States to a place outside thereof, that is, Suriname, any merchandise, article, and object, that is, infant formula and sheetrock, and did conceal and facilitate the concealment of such merchandise, article, and object prior to

exportation, knowing the same to be intended for exportation, contrary to any law or regulation of the United States, that is, Title 15, Code of Federal Regulations, Section 30.71:

| 30 | February 16, 2017 |
|----|-------------------|
| 31 | June 22, 2017 |

In violation of Title 18, United States Code, Sections 554 and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations of Counts 1 through 31 of this Superseding Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants have an interest.

2.      Upon conviction of any violation of Title 18, United States Code, Section 1343 or 1349, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.  The property subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) includes, but is not limited to:

    a.  a forfeiture judgment equal to the amount of proceeds traceable to the offense for each defendant, to be at least:

        i.  $61,507,358.62 for **JOHNNY GROBMAN**; and

        ii.  $69,475,480.93 for **RAOUL DOEKHIE** and **SHERIDA NABI**;

    b.  Bank of America account number 5497783375 in the name of J Trading LLC;

    c.  Regions Bank account number 224282316 in the name of Tropical Marketing and Distribution of Suriname LLC; and

    d.  Bank of America account number 898052400268 in the name of Nutrisource LLC.

3.      Upon conviction of any violation of Title 18, United States Code, Section 1957, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section

982(a)(1), any property, real or personal, involved in the offense, or any property traceable to such property.  The property subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1) includes, but is not limited to, the following:

    a.   Real property located at 100 Golden Beach Drive, Golden Beach, Florida 33160;

    b.   Merrill Lynch account number 71-572-13274 in the name of Johnny Grobman;

    c.   UBS Financial Services account number SR 09121 SD in the name of Johnny Grobman and Noemi Geller;

    d.   UBS Financial Services account number SR 09122 SD in the name of Johnny Groman and Noemi Geller;

    e.   UBS Financial Serices account number SR 09123 SD in the name of Johnny Grobman and Noemi Geller;

    f.   UBS Financial Services account number SR 33918 SD in the name of J Trading LLC;

    g.   Bank of America account number 898040983836 in the name of Johnny Grobman and Noemi A. Geller;

    h.   Bank of America account number 898052399476 in the name of Nutrisource LLC;

    i.   Bank of America account number 898052399463 in the name of Vejota Holdings LLC;

    j.   Bank of America account number 55501909650 in the name of Raoul I. Doekhie and Sherida S. Nabi; and

    k.   Bank of America account number 898045994558 in the name of Raoul I. Doekhie;

4.    If the property described above as being subject to forfeiture, as a result of any act or omission of defendants cannot be located upon the exercise of due diligence;

    a.   has been transferred or sold to, or deposited with, a third party;

    b.   has been placed beyond the jurisdiction of the court;

    c.  has been substantially diminished in value; or

    d.  has been commingled with other property which cannot be subdivided without

       difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the above forfeitable

property.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the

procedures set forth in Title 21, United States Code, Section 853, made applicable by Title 28,

United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

_____

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

_____

SHANNON SHAW
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

v.

**RAOUL DOEKHIE, JOHNNY**
**GROBMAN, and SHERIDA NABI,**

_____Defendants_____/

CASE NO. 18-20989-CR-RKA/JB(s)

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

| | | | |
|---|---|---|---|
| New defendant(s) | Yes ___ | No ✓ | |
| Number of new defendants | | 0 | |
| Total number of counts | | 32 | |

**Court Division:** (Select One)

| ✓ | Miami | ___ | Key West |
|---|---|---|---|
| ___ | FTL | ___ | WPB ___ FTP |

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    No
   List language and/or dialect    _____

4. This case will take  14-15  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

| | | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | ✓ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | ✓ |
| V | 61 days and over | _____ | | |

6. Has this case previously been filed in this District Court?    (Yes or No)    Yes
   If yes: Judge Roy Altman    Case No.  18-20989-CR-RKA/JB
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)    No
   If yes: Magistrate Case No.    _____
   Related miscellaneous numbers:    _____
   Defendant(s) in federal custody as of    2/8/2019
   Defendant(s) in state custody as of    _____
   Rule 20 from the District of    _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes ___    No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes ___    No ✓

_____
Shannon Shaw
Assistant United States Attorney
FL Bar No. 92806

*Penalty Sheet(s) attached

REV 8/13/2018

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**   **SHERIDA NABI**

**Case No:**   **18-20989-CR-RKA/JB(s)**

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalties:** 20 Years' Imprisonment

Counts #: 2-9

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalties:** 20 Years' Imprisonment

Counts #: 18 & 19

Money Laundering

Title 18, United States Code, Section 1957

**\*Max. Penalties:** 15 Years' Imprisonment

Count #: 21

Conspiracy to obtain by fraud and deception pre-retail medical products

Title 18, United States Code, Section 670(a)(6)

**\*Max. Penalties:** 15 Years' Imprisonment

Counts #: 22-29

Theft of pre-retail medical products

Title 18, United States Code, Section 670(a)(1)

**\*Max. Penalties:** 15 Years' Imprisonment

Counts #: 30 & 31

Smuggling Goods from the United States

Title 18, United States Code, Section 554

**\*Max. Penalties:** 10 Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** **JOHNNY GROBMAN**

**Case No:** **18-20989-CR-RKA/JB(s)**

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalties:** 20 Years' Imprisonment

Counts #: 2, 8, & 9

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalties:** 20 Years' Imprisonment

Counts #: 10-17, 20

Money Laundering

Title 18, United States Code, Section 1957

**\*Max. Penalties:** 15 Years' Imprisonment

Count #: 21

Conspiracy to obtain by fraud and deception pre-retail medical products

Title 18, United States Code, Section 670(a)(6)

**\*Max. Penalties:** 15 Years' Imprisonment

Counts #: 30 & 31

Smuggling Goods from the United States

Title 18, United States Code, Section 554

**\*Max. Penalties:** 10 Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:   RAOUL DOEKHIE**

**Case No:   18-20989-CR-RKA/JB(s)**

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalties:** 20 Years' Imprisonment

Counts #: 2-9

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalties:** 20 Years' Imprisonment

Counts #: 18 & 19

Money Laundering

Title 18, United States Code, Section 1957

**\*Max. Penalties:** 15 Years' Imprisonment

Count #: 21

Conspiracy to obtain by fraud and deception pre-retail medical products

Title 18, United States Code, Section 670(a)(6)

**\*Max. Penalties:** 15 Years' Imprisonment

Counts #: 22-29

Theft of pre-retail medical products

Title 18, United States Code, Section 670(a)(1)

**\*Max. Penalties:** 15 Years' Imprisonment

Counts #: 30 & 31

Smuggling Goods from the United States

Title 18, United States Code, Section 554

**\*Max. Penalties:** 10 Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**